UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Shawn O'Neal, ) | COMPLAINT |
| ) | |
| Plaintiff, ) | Civil Action No. _____ |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| TransUnion, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

# COMPLAINT

1. This is an action brought by the Plaintiff, Shawn O'Neal, for actual, statutory, and punitive damages, attorney's fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Darlington County and the Defendant transacted business in this division.

## PARTIES

9. The Plaintiff, Shawn O'Neal, is a resident and citizen of the State of South Carolina, Darlington County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires the Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

13. The Plaintiff alleges that Defendant repeatedly failed to investigate Plaintiff's disputes and failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file.

## FACTUAL ALLEGATIONS

14. On or about May 15, 2023, through Credit Karma, Plaintiff learned PHH Mortgage

Services was reporting his Mortgage to TransUnion as 30-days late. As a result, Plaintiff's TransUnion credit score dropped 74 points.

15. On or about May 19, 2023, Plaintiff received an email from Credit Karma informing him a missed payment had been added to an account on his TransUnion credit report.

16. On or about May 23, 2023, Plaintiff received another email from Credit Karma notifying him a missed payment had been added to his TransUnion credit report.

17. On July 11, 2023, Plaintiff obtained a free copy of his TransUnion credit report online and discovered there were multiple items reporting incorrectly. Specifically, PHH Mortgage ICE Center, Account 954801277, was reporting as 30 days late; I C Systems Collection, Account 12360****, was reporting a collection account on an AT&T bill that was paid directly to AT&T at the time the account was closed; and The Bureaus, Account 41583****, a fraudulent account not opened by Plaintiff.

18. On or about July 11, 2023, Plaintiff mailed a written dispute letter **("First TransUnion Dispute")** to TransUnion, wherein he stated he had obtained his credit report online and found a number of items were being reported incorrectly. Specifically, Plaintiff informed TransUnion the PHH Mortgage ICE Center, Account No. 954801277, reporting as 30 days late, was incorrect because PHH had wrongfully added force-placed insurance to his mortgage and the account was not late. Plaintiff also disputed the I C Systems Collections Account No. 12360****, a collection account for AT&T, because Plaintiff had paid and cancelled the service with AT&T and did not owe the charges. Finally, the Plaintiff disputed The Bureaus, Account No. 41583****, a collection account reporting for

Capital One Bank card, as a fraudulent account because Plaintiff never had a Capital One credit card. Plaintiff also disputed all of the phone numbers being reported, other than his own, which he provided in his dispute letter. Plaintiff provided TransUnion with his name, Social Security number, date of birth, and address.

19. TransUnion received Plaintiff's First Dispute on July 15, 2023.

20. On or about July 21, 2023, TransUnion sent Plaintiff the results of its alleged investigation into Plaintiff's dispute wherein TransUnion notified Plaintiff that PHH Mortgage Service had verified the account as accurate. The Bureaus and I C Systems accounts were also verified as accurate. TransUnion did no investigation of its own of Plaintiff's disputes, but simply accepted the responses of the furnishers of the inaccurate information. As a result, all three inaccurate accounts continued to be reported on Plaintiff's TransUnion credit reports.

21. On or about August 18, 2023, Plaintiff mailed a new dispute letter **("Second TransUnion Dispute")** to TransUnion, wherein he stated he had received the Investigation Results from TransUnion, but his credit report was still incorrect. Plaintiff requested TransUnion send him a copy of every document that had been provided to TransUnion to verify and/or update the inaccurate accounts. Plaintiff also requested TransUnion to correct or delete the inaccurate accounts, specifically, the PHH Mortgage ICE Center, Account No. 954801277, reporting as 30 days late, The Bureaus, Account No. 41583****, a fraudulent collection account reporting for a Capital One Bank card which Plaintiff never opened, and the I C Systems Collections, Account No. 12360****, a collection account reporting for

AT&T, which Plaintiff had paid in full and cancelled years prior. Despite TransUnion's July 21, 2023, Investigation Results stating the incorrect phone numbers had been removed, Plaintiff informed TransUnion they were actually still reporting on his credit report and needed to be removed.

22. Trans Union received Plaintiff's Second Dispute letter August 24, 2023.

23. On or about August 26, 2023, TransUnion sent Plaintiff a letter regarding Remedying the Effect of Identity Theft wherein TransUnion informed Plaintiff that under the fraud resolution process, he was entitled to a copy of his rights under the Fair Credit Reporting Act.

24. On or about September 20, 2023, TransUnion sent Plaintiff the results of its alleged investigation into Plaintiff's dispute. Unfortunately, TransUnion again failed to perform any investigation of its own. Instead, TransUnion simply forwarded Plaintiff's dispute to the furnishers of the disputed accounts and then accepted the furnishers' responses. As a result, because both PHH Mortgage Service Account and I C Systems Collections verified the accounts as accurate, TransUnion continued reporting the inaccurate accounts on Plaintiff's TransUnion credit file. The Bureaus account was deleted.

25. On or about October 6, 2023, Plaintiff mailed a third written dispute to TransUnion **("Third TransUnion Dispute"),** wherein he stated he had received the second Investigation Results, but his credit report was still not correct. Plaintiff again requested TransUnion to send him a copy of every document that was provided to TransUnion to verify or update the accounts. Plaintiff requested TransUnion to correct the PHH Mortgage

ICE Center 954801277 account which was reporting 30 days late for May and July of 2023. Plaintiff stated PHH had sent him a letter admitting the force-placed insurance added in May of 2023 was improper, but they continued to report the account as delinquent. Plaintiff informed TransUnion the account should be updated to remove the late payments and show the account as current. Plaintiff also disputed the I C Systems Collections Account, which was a collection account for AT&T which Plaintiff had paid off years ago. Finally, Plaintiff again disputed numerous incorrect phone numbers still being reported on Plaintiff's credit report.

26. Plaintiff never received a response to his Third TransUnion Dispute from Defendant.

27. On or about June 26, 2024, Plaintiff obtained a new copy of his credit report from TransUnion, and it was still reporting inaccurate information.

28. On or about June 26, 2024, Plaintiff mailed a fourth written dispute to TransUnion **("Fourth TransUnion Dispute")**, wherein he again disputed the PHH Mortgage ICE Center, Account No. 954801277, reporting as 30 days late for several months in 2023 and 2024 as never late, and the I C Systems Collections, Account No. 12360****, as paid in full prior to being sent to collections.

29. TransUnion received Plaintiff's Fourth dispute letter on July 2, 2024.

30. On or about July 18, 2024, TransUnion sent Plaintiff the results of its alleged investigation into Plaintiff's dispute. Unfortunately, TransUnion again failed to perform any investigation of its own. Instead, TransUnion simply forwarded Plaintiff's dispute to the furnishers of the disputed accounts and then accepted the furnishers' responses. As a

result, because both PHH Mortgage Service and I C Systems Collections verified the accounts as accurate, TransUnion continued reporting the inaccurate accounts on Plaintiff's TransUnion credit file.

31.     As of the date of the filing of this Complaint, Defendant continues to issue false, inaccurate credit reports to third parties which has harmed Plaintiff's reputation and caused him damages.

32.     From May 2023 through July 2024, the Plaintiff's TransUnion credit report was viewed by Syncb/Amazon, IR/TriPoint Lending, Conn Appliances, Inc., Granite Bay Acceptance, Republic Finance, CashnetUSA, Silverlake Financial, Regional Finance, IR/Lendwyse LLC, Advance America, Credit9, Inc., Warehouse Home Furnishing, Bank of America, Syncb/Lowes, Syncb/Syncb, and T-Mobile

33.     Upon receipt of the ACDV responses, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

34.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D.

Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

35.  If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

36.  Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

37.  The Plaintiff adopts the averments and allegations of paragraphs 14 through 36 hereinbefore as if fully set forth herein.

38.  Defendant maintains and distributes credit data files on the Plaintiff's credit.

39.  Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

40.  The Plaintiff further alleges that Defendant repeatedly failed to delete and suppress

erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

41. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

42. As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, humiliation, loss of enjoyment of life, and numerous hours of lost time. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

43. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

44. Plaintiff is entitled to attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

45. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

## COUNT TWO
(Fair Credit Reporting Act)

46. The Plaintiff adopts the averments and allegations of paragraphs 14 through 45 hereinbefore as if fully set forth herein.

47. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in

consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

48. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

49. As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, humiliation, loss of enjoyment of life, and numerous hours of lost time. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

50. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

51. Plaintiff is entitled to attorney fees, pursuant to 15 U.S.C. §1681n(a).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed ID #10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169